UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

Gajanan Shanbhag,                    )
                                     )
                        Plaintiff,   )    Civil Action No. 7:20-cv-00120-BHH
                                     )
            vs.                      )
                                     )
Yannic Dupont and Titan Transport, Ltd., )    **OPINION AND ORDER**
                                     )
                       Defendants.   )
_____     )

This matter is before the Court on Defendants Yannic Dupont ("Dupont") and Titan

Transport, Ltd.'s ("Titan") motions to dismiss for lack of personal jurisdiction, insufficiency

of process, insufficiency of service of process and the expiration of the applicable statute

of limitations. (ECF Nos. 7 & 22.) For the reasons set forth in this Order, the motions are

granted. Titan's related motion to set aside default (ECF No. 34) is also granted.

**BACKGROUND**

Plaintiff Gajanan Shanbhag ("Plaintiff") and Dupont were involved in a motor

vehicle accident on October 11, 2015, in Spartanburg County, South Carolina ("the

accident"). At the time of the accident, Dupont was operating a commercial vehicle within

the course and scope of his employment for Titan. On September 27, 2018, Plaintiff filed

suit in the Spartanburg County Court of Common Pleas, No. 2018-CP-42-03342, alleging

that Dupont was a resident and citizen of Canada and that Titan was a Canadian business

entity in the trucking and transportation industry. (Compl. ¶ 2, ECF No. 1-1.)

In the time period between the accident and the filing of the complaint, Titan filed

for bankruptcy in Saskatchewan, Canada. On May 1, 2017, Deloitte Restructuring Inc.

("Deloitte") was appointed trustee of the estate of Titan (*see* Certificate of Appointment,

ECF No. 7-1) and, separately, was appointed special receiver for creditor HSBC Bank Canada. Deloitte was discharged from its trustee and receivership appointments on or about July 31 and October 3, 2019, respectively. (*See* Order Discharging Trustee, ECF No. 7-2; Termination of Receiver Appointment, ECF No. 7-3.) There is no evidence that Deloitte had any relationship to, with, or for Titan beyond October 3, 2019.

On January 23, 2019, Plaintiff filed an *ex parte* motion for extension of time to effect service of process pursuant to the Hague Service Convention. (*See* ECF No. 7-4.) On February 7, 2019, the State court judge granted the motion and enlarged the 120-day time limit for service to one year from the date of filing—namely, September 27, 2019. (*See* ECF No. 7-5.) On September 20, 2019, Plaintiff filed a second *ex parte* motion for extension of time to effect service of process and, on September 25, 2019, the State court judge issued an order extending the deadline to February 27, 2020. (*See* ECF Nos. 6 & 7.)

On December 30, 2019, Plaintiff filed a certificate of service purporting to evidence service of process on Titan through a financial advisor at a Deloitte office on November 28, 2019, in Alberta, Canada. (*See* ECF No. 7-8.) On the same date, Plaintiff filed an affidavit of personal service purporting to evidence service of process on Dupont on December 12, 2019, in Alberta, Canada. (*See* ECF No. 7-9.) On January 10, 2020, Dupont removed the case to this Court on the ground of diversity jurisdiction. (ECF No. 1.) The notice of removal states that Titan, which no longer exists as a going concern, has not been properly joined or served in the case, and, therefore, its consent was not required for removal. (*Id.*)

On January 17, 2020, Dupont filed a motion to dismiss pursuant to Federal Rules

of Civil Procedure 12(b)(2), 12(b)(4) and 12(b)(5) for lack of personal jurisdiction, insufficiency of process, insufficiency of service of process, and the expiration of the applicable statute of limitations. (ECF No. 7.) Plaintiff filed a response in opposition and Dupont replied in turn. (ECF Nos. 15 & 16.) On May 21, 2020, Titan filed a motion to dismiss pursuant to Rules 12(b)(2), 12(b)(4) and 12(b)(5) for lack of personal jurisdiction, insufficiency of process, insufficiency of service of process, and the expiration of the applicable statute of limitations. (ECF No. 22.) Plaintiff filed a response in opposition and Titan replied in turn. (ECF Nos. 28 & 32.) On June 12, 2020, Titan filed a motion pursuant to Rule 55(c) for an order setting aside the default entered by the Clerk of Court on June 5, 2020. (ECF No. 34.) Plaintiff filed a response in opposition and Titan replied in turn. (ECF Nos. 35 & 36.) These maters are ripe for consideration and the Court now issues the following ruling.

## **LEGAL STANDARDS**

**Statute of Limitations and Commencement of the Action**

"In a diversity action, a federal court must apply state law not only to determine the relevant statute of limitations but also to determine when a civil action is 'commenced' for purposes of the limitations period." *Kinder v. City of Myrtle Beach*, No. 4:15-CV-01416-RBH, 2017 WL 227969, at *2 (D.S.C. Jan. 19, 2017), *aff'd in part, appeal dismissed in part*, 700 F. App'x 287 (4th Cir. 2017) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751–53 (1980); *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 534 (1949)) (footnotes omitted). The complaint in this case concerns alleged damages arising from a motor vehicle accident that occurred in South Carolina, so South Carolina law applies. The applicable statute of limitations is three years. S.C. Code § 15-3-350. "Unless

an action is commenced before expiration of the limitations period, the plaintiff's claim is

normally barred." *Blyth v. Marcus*, 470 S.E.2d 389, 390–91 (S.C. Ct. App. 1996) (citing

*McLain v. Ingram,* 444 S.E.2d 512 (S.C. 1994)).

> South Carolina requires both *filing* of the summons and complaint and *service* on the defendant to commence a civil action. Section 15-3-20(B) of the South Carolina Code provides: "A civil action is commenced when the summons and complaint are filed with the clerk of court if actual service is accomplished within one hundred twenty days after filing." S.C. Code Ann. § 15-3-20(B) (2005) . . . . South Carolina Rule of Civil Procedure 3(a) similarly provides:
>
> > **(a) Commencement of civil action.** A civil action is commenced when the summons and complaint are filed with the clerk of court if:
> >
> > > (1) the summons and complaint are served within the statute of limitations in any manner prescribed by law; or
> > >
> > > (2) **if not served within the statute of limitations, actual service must be accomplished not later than one hundred twenty days after filing.** Rule 3(a), SCRCP (second emphasis added).

*Kinder*, 2017 WL 227969, at \*3 (emphasis in original, citations omitted). The South

Carolina Supreme Court has explained the interplay between § 15-3-20(B) and Rule 3(a)

as follows:

> [T]he legislative intent in amending section 15-3-20(B) in 2002 was to provide a safety net for cases where filing of the summons and complaint occurs near the end of the statute of limitations and service is made after the limitations period has run. The statute and the rule, read together, provide that (1) an action is commenced upon filing the summons and complaint, if service is made within the statute of limitations, and (2) if filing but not service is accomplished within the statute of limitations, then service must be made within 120 days of *filing*.

*Mims ex rel. Mims v. Babcock Ctr., Inc.*, 732 S.E.2d 395, 397–98 (S.C. 2012) (emphasis

in original).

4

**Tolling of the Statute of Limitations**

Because South Carolina's statute of limitations applies in removed diversity actions, the State's tolling rules also apply. *See Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir. 1999) ("[I]n any case in which a state statute of limitations applies—whether because it is 'borrowed' in a federal question action or because it applies under *Erie* in a diversity action—the state's accompanying rule regarding equitable tolling should also apply."). The South Carolina Supreme Court has explained the application of the State's tolling rules as follows:

> "'Tolling' refers to suspending or stopping the running of a statute of limitations; it is analogous to a clock stopping, then restarting." 51 Am. Jur. 2d Limitation of Actions § 169 (2000). "Tolling may either temporarily suspend the running of the limitations period or delay the start of the limitations period." *Id.*
>
> South Carolina law provides for tolling of the applicable limitations period by statute in certain circumstances. *See* S.C. Code Ann. § 15-3-30 (2005) (stating exceptions to the running of the statute of limitations when the defendant is out of the state); *id.* § 15-3-40 (providing exceptions for persons under a disability, including being underage or insane).
>
> In addition to these statutory tolling mechanisms, however, "[i]n order to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits, the doctrine of equitable tolling may be applied to toll the running of the statute of limitations." 54 C.J.S. Limitations of Actions § 115 (2005). "Equitable tolling is a nonstatutory tolling theory which suspends a limitations period." *Ocana v. Am. Furniture Co.*, 135 N.M. 539, 91 P.3d 58, 66 (2004).
>
> Equitable tolling is judicially created; it stems from the judiciary's inherent power to formulate rules of procedure where justice demands it. *Rodriguez v. Superior Court*, 176 Cal. App. 4th 1461, 98 Cal. Rptr. 3d 728 (2009). "Where a statute sets a limitation period for action, courts have invoked the equitable tolling doctrine to suspend or extend the statutory period 'to ensure fundamental practicality and fairness.'" *Id.* at 736 (citation omitted).
>
> The party claiming the statute of limitations should be tolled bears the burden of establishing sufficient facts to justify its use. *Ocana*, 91 P.3d at 65; *see also* 54 C.J.S. Limitations of Actions § 115 ("The party who seeks to invoke equitable tolling bears the devoir of persuasion and must, therefore, establish a compelling basis for awarding such relief.").
>
> It has been observed that "[e]quitable tolling typically applies in cases

where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control." *Ocana*, 91 P.3d at 66. However, jurisdictions have considered tolling in a variety of contexts and have developed differing parameters for its application. *See, e.g.*, *Irby v. Fairbanks Gold Mining, Inc.*, 203 P.3d 1138, 1143 (Alaska 2009) ("Under the doctrine of equitable tolling, when a party has more than one legal remedy available, the statute of limitations is tolled while the party pursues one of the possible remedies."); *Abbott v. State*, 979 P.2d 994, 998 (Alaska 1999) ("Federal precedent equitably tolls the limitations period in three circumstances: (1) where the plaintiff has actively pursued his or her judicial remedies by filing a timely but defective pleading; (2) where extraordinary circumstances outside the plaintiff's control make it impossible for the plaintiff to timely assert his or her claim; or (3) where the plaintiff, by exercising reasonable diligence, could not have discovered essential information bearing on his or her claim." (footnotes omitted)); *Kaplan v. Morgan Stanley & Co.*, 186 Vt. 605, ——, 987 A.2d 258, 264 (2009) (2009 WL 2401952) ("Equitable tolling applies either where the defendant is shown to have actively misled or prevented the plaintiff in some extraordinary way from discovering the facts essential to the filing of a timely lawsuit, or where the plaintiff has timely raised the same claim in the wrong forum.") (citing *Beecher v. Stratton Corp.*, 170 Vt. 137, 743 A.2d 1093, 1098 (1999)); *cf. Machules v. Dep't of Admin.*, 523 So.2d 1132, 1134 (Fla. 1988) (stating the doctrine of equitable tolling, unlike equitable estoppel, does not require deception or misrepresentation by the defendant; rather, it serves to ameliorate the harsh results that sometimes flow from a strict, literalistic application of administrative time limits).

> In our view, the situations described above do not constitute an exclusive list of circumstances that justify the application of equitable tolling. "The equitable power of a court is not bound by cast-iron rules but exists to do fairness and is flexible and adaptable to particular exigencies so that relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other." *Hausman v. Hausman*, 199 S.W.3d 38, 42 (Tex. App. 2006). Equitable tolling may be applied where it is justified under all the circumstances. We agree, however, that equitable tolling is a doctrine that should be used sparingly and only when the interests of justice compel its use.

*Hooper v. Ebenezer Sr. Servs. & Rehab. Ctr.*, 687 S.E.2d 29, 32–33 (2009). Where a defendant's actions have hindered service of process, depending on the unique circumstances of the case, the South Carolina Supreme Court has applied equitable tolling to excuse a claimant's failure to timely commence the action. *Id.* at 34 (applying equitable tolling where personal representative of deceased nursing home resident,

despite persistent efforts to serve nursing home both prior to expiration of the limitations period and during 120-day statutory period, was unable to timely effect service due to nursing home's failure to properly list its registered agent for service with Secretary of State, but successfully effected service approximately one week past the 120 days). The South Carolina Supreme Court has stated that equitable tolling is appropriate where "public policy and the interests of justice weigh heavily in favor of allowing [a plaintiff's] claim to proceed," and where "[t]he statute of limitations' purpose of protecting defendants from stale claims must give way to the public's interest in being able to rely on public records required by law." *Id.*

## DISCUSSION

Dupont and Titan's motions to dismiss are premised on the assertion that Plaintiff failed to commence his personal injury lawsuit before the statute of limitations had run and that Plaintiff's negligence claims are, therefore, time barred. (*See* ECF No. 7 & 22.) In response, Plaintiff contends that the period of time to effect service was extended by the State court pursuant to the Hague Convention, and that the statute of limitations was tolled under either the doctrine of equitable tolling or S.C. Code § 15-3-30. (*See* ECF Nos. 15 & 28.) For the following reasons, the Court finds that Plaintiff's claims are time barred and subject to dismissal.

### A. Commencement of the Action

It is undisputed that, in the absence of any tolling provisions, the statute of limitations on Plaintiff's claims pertaining to the motor vehicle accident expired October 11, 2018, three years after the date on which the accident occurred. Plaintiff filed this action in the Spartanburg County Court of Common Pleas on September 27, 2018. (ECF

No. 1-1.) Since filing but not service was accomplished within the statute of limitations, service was required to be made within 120 days of filing, or by January 25, 2019. The certificate of service purporting to evidence service of process on Titan reflects a service date of November 28, 2019. (ECF No. 7-8.) The affidavit of personal service purporting to evidence service of process on Dupont reflects a service date of December 12, 2019. (ECF No. 7-9.) Neither of the service dates fell within the 120-day "safety net" provided by § 15-3-20(B) for actions where the complaint is filed, but service is not achieved, before the statute of limitations has run. *See Mims*, 732 S.E.2d at 397–98. Thus, by operation of § 15-3-20(B) and South Carolina Rule of Civil Procedure 3(a)(2), Plaintiff's action was not timely commenced and is barred by the statute of limitations. *See Blyth*, 470 S.E.2d at 390–91.

## B. Hague Service Convention

Plaintiff's first argument against a straightforward application of the statute of limitations is that the period of time in which to effect service on Dupont and Titan pursuant to the Hague Convention was correctly enlarged by the State court when it granted Plaintiff's *ex parte* motions for extension of time. (*See* ECF No. 15 at 5–7; ECF No. 28 at 12–15.)

The purpose of the "Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention), 20 U.S.T. 361, T.I.A.S. No. 6638[,] . . . is to simplify, standardize, and generally improve the process of serving documents abroad. *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988)). "To that end, the Hague Service Convention specifies certain approved methods

of service and 'pre-empts inconsistent methods of service' wherever it applies." *Id.* (quoting *Schlunk*, 486 U.S. at 699). "The primary innovation of the Convention is that is requires each state to establish a central authority to receive requests for service of documents from other countries." *Schlunk*, 486 U.S. at 698–99 (citing 20 U.S.T. 362, T.I.A.S. 6638, art. 2). "Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law." *Id.* at 699 (citing 20 U.S.T. 362, T.I.A.S. 6638, art. 5). "A state may also consent to methods of service within its boundaries other than a request to its central authority." *Id.* (citing 20 U.S.T. 362, T.I.A.S. 6638, arts. 8–11, 19).

As a general rule, the Hague Convention applies "'in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.'" *Id.* (quoting 20 U.S.T., at 362). "By virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." *Id.* However, the Hague Convention "*shall not apply* where the address of the person to be served with the document is not known." 20 U.S.T. 361, T.I.A.S. No. 6638, art. 1 (emphasis added).

As an initial matter, it unclear whether the Hague Convention applied to this case because Plaintiff did not know the addresses of Dupont or Titan during the time period when he was trying to effect service through the methods prescribed by the Convention. Plaintiff conceded as much in his *ex parte* motions before the State court, where he stated that "the office of the sheriff of Saskatoon, SK attempted to locate the defendants at one of the last known addresses for them," that in the process of attempted service it was

discovered "Dupont had moved out of the province to an unknown address," that Titan "is no longer in business . . . in Saskatoon, SK and may have filed for bankruptcy," that Plaintiff "still d[id] not have information as to the whereabouts of [Dupont]" (ECF No. 7-4 at 2–3), that "while Plaintiff's counsel have continued their efforts to locate [Dupont], our efforts have been unsuccessful to date," that "Plaintiff's counsel is also continuing their efforts to serve the defunct [Titan]," and that "[Dupont] has moved with no forwarding address and [Titan] is defunct" (ECF No. 7-6 at 1–3). Because Plaintiff did not know the address of either Defendant during the relevant time period, it can reasonably be argued that the Hague Convention and its methods of service of process did not apply.

Even assuming the Hague Service Convention did apply, it provides for a mechanism of service of process only; nothing in its substance purports to alter the requirements imposed by South Carolina law with respect to the statute of limitations. *See Koehler v. Dodwell*, 152 F.3d 304, 307 (4th Cir. 1998) ("The purpose of the Hague Service Convention is to create a *method for service* of judicial and extrajudicial documents to addressees in different countries." (emphasis added)); *see also Paracelsus Healthcare Corp. v. Philips Med. Sys., Nederland, B.V.*, 384 F.3d 492, 494–95, 497–98 (8th Cir. 2004) (affirming grant of summary judgment for lack of service before expiration of statute of limitations; rejecting plaintiff's arguments that the Hague Convention could prevent timely commencement of a suit and that the state statute of limitations was equitably tolled when plaintiff attempted to serve foreign defendant via the Convention by delivering process to the Dutch Central Authority for service; and stating: (1) plaintiff "did not act reasonably when it ignored the alternatives allowed under the Hague Convention for service of process," (2) plaintiff "knew at least eight months (and perhaps as many as

seventeen months) before the statute of limitations was to expire that it had named the wrong defendant," (3) plaintiff "should have recognized the difficulties involved in serving a foreign corporation and immediately used every method available to accomplish service within the limitations period," and (4) "failure to explore alternate methods for service of process was especially unreasonable because the amended summons and complaint were not transmitted to the Central Authority until one month before the statute of limitations expired"). Plaintiff has not produced any authority for the proposition that the Hague Convention displaces state law regarding the application of a statute of limitations. (*See* ECF Nos. 15 & 28.) Accordingly, Plaintiff's first argument against application of the statute of limitations in the instant case is unavailing.

### C. South Carolina Code § 15-3-30

In his responses to Defendants' motions to dismiss, Plaintiff briefly references S.C. Code § 15-3-30 as a possible source of tolling the statute of limitations. (ECF No. 15 at 9, 12; ECF No. 28 at 17, 19.) Section 15-3-30 states:

> If when a cause of action shall accrue against any person he shall be out of the State, such action may be commenced within the terms in this chapter respectively limited after the return of such person into this State. And if, after such cause of action shall have accrued, such person shall depart from and reside out of this State or remain continuously absent therefrom for the space of one year or more, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action.

S.C. Code Ann. § 15-3-30. This District has previously stated "the limitations period may be tolled [pursuant to § 15-3-30] when the name and location of the defendant is not known to plaintiff and is not able to be discovered by reasonable methods before the statute of limitations runs." *Alday v. Tecphy Div. Firminy*, 10 F. Supp. 2d 562, 565 (D.S.C. 1998), *aff'd*, 182 F.3d 906 (4th Cir. 1999). However, the mere fact that a plaintiff does not

know a defendant's location is not enough to warrant tolling. *See id.* (holding § 15-3-30 did not toll running of limitations period and plaintiffs failed to timely commence action where plaintiffs' attorney stated he learned of existence and involvement of nonresident defendant approximately 10 days before statute of limitations expired, plaintiffs filed complaint within limitations period, defendant was amenable to service of process under the Hague Convention, and plaintiffs simply failed to serve defendant on time); *see also Tiralango v. Balfry*, 517 S.E.2d 430, 432 (1999) (holding statute of limitations on claim against non-resident defendant arising from auto accident was not tolled where plaintiff did not know defendant's address until plaintiff requested and received accident report containing address one month after accident; concluding defendant's address was at all times available to plaintiff).

Plaintiff argues that because his "claims have been continuously asserted and known to these Defendants since at least 2016," and because counsel retained the services of two process serving agencies to assist in locating Defendants, "the record can only lead this Court to conclude that the statute of limitations was tolled because the out-of-state (in fact, out-of-country) Defendants could not be located and served in accordance with the Hague Convention through no fault of the Plaintiff." (ECF No. 15 at 11.) However, several facts serve to undercut Plaintiff's argument. First, Plaintiff's "claims" in the instant lawsuit were not "known" to Defendants merely because Defendants' liability insurance carrier denied liability on December 7, 2016 (*see* SGI Letter, ECF No. 15-1), and Defendants were under no duty to anticipate the filing of a lawsuit. Notice of an insurance claim and notice of a lawsuit, especially one that has not yet be filed, are not the same thing. Second, Plaintiff had 673 days from the time the claim was denied

(December 7, 2016) to file the complaint and serve Defendants prior to the expiration of the statute of limitations (October 11, 2018). Plaintiff, not Defendants, is responsible for his choice to wait until the very end of the limitations period to initiate this action. Once Plaintiff filed the action in State court (September 27, 2018), it took 441 days to achieve service of process (December 12, 2019). If Plaintiff had acted affirmatively to protect his rights and prosecute this action, he could have filed and served the complaint, even allowing for the delays that occurred, with more than 200 days to spare. Third, the efficiency of Plaintiff's second attorney, Rachel Peavy of Simmons Law Firm, in securing service of process belies the notion that effectuating service had to be so laborious. Ms. Peavy entered a notice of appearance in the underlying State court action on October 1, 2019 and engaged the services of a company that specializes in service of process on international defendants in accordance with Hague Convention requirements—namely, Civil Action Group APS—on October 4, 2019. (Peavy Aff. ¶¶ 2–3, ECF No. 15-10.) Civil Action Group APS was able to obtain service of process on Dupont 69 days later, on December 12, 2019. (*Id.* ¶ 11.) Finally, Plaintiff was aware from the very beginning that the potential defendants to any lawsuit he might bring arising from the October 2015 accident were Canadian citizens, and could have anticipated that service of process would be challenging. Simply put, he has not shown that Defendants' whereabouts were not able to be discovered by reasonable methods before the statute of limitations had run. *See Alday*, 10 F. Supp. 2d at 565 (declining to apply tolling under § 15-3-30 where plaintiffs failed to timely serve defendant pursuant to Hague Convention). Accordingly, the Court finds that § 15-3-30 does not operate to toll the statute of limitations under the specific facts of this case.

### D. Equitable Tolling

Plaintiff's final argument in favor of excusing the commencement of his action after the expiration of the statute of limitations is that the limitations period should be equitably tolled. (*See* ECF No. 15 at 9–12; ECF No. 28 at 15–20.) Plaintiff relies on the South Carolina Supreme Court's holding in *Hooper v. Ebenezer Sr. Servs. & Rehab. Ctr.* for the assertion that if the Court were to grant Defendants' motions to dismiss "'it would permit one party to suffer a gross wrong at the hands of the other.'" (*See* ECF No. 15 at 9–12 (quoting *Hooper*, 687 S.E.2d at 33).)

Plaintiff's reliance on *Hooper* is misplaced and he has not demonstrated circumstances that would justify the application of equitable tolling. In *Hooper*, the personal representative of a deceased nursing home resident brought a negligence and wrongful death action against the nursing home. 687 S.E.2d at 30. The plaintiff filed her action approximately three months prior to the expiration of the statute of limitations. *Id.* Counsel for the plaintiff made extensive efforts to serve the defendant, a South Carolina corporation, through its registered agent both before the statute of limitations had run and during the 120 days following its expiration. *See id.* at 30–31. However, the plaintiff's efforts at service were hindered by the fact that the nursing home failed to accurately list its registered agent for service of process with the Secretary of State as required by state law. *Id.* Ultimately, the plaintiff perfected service on the defendant approximately one week after the 120-day grace period expired. *Id.* at 31, 34. The *Hooper* court held that, under the unique circumstances of the case, the appropriate remedy for the nursing home's failure to properly list its registered agent with the Secretary of State was to equitably toll the limitations period. *Id.* at 34.

Although Plaintiff asserts that to grant Defendants' motions would cause Plaintiff to suffer a "gross wrong at the hands of another," he has not identified any action or inaction on the part of Defendants that hindered him from effectuating service of process. Thus, the circumstances at issue in the instant case are distinguishable from *Hooper*, and the reasons that led that court to apply equitable tolling are not present here. Accordingly, Plaintiff's claims are time barred.

### E. Motion to Set Aside Default

Titan filed a separate motion to set aside entry of default and for leave to file responsive pleadings and memorandum in support. (ECF No. 34.) In the motion, Titan specified that it was making a special limited appearance without waiver of its continuing objection to the Court's exercise of personal jurisdiction in light of Titan's assertion that it has never been lawfully served with process in this case. (*See id.* at 1, n.1.)

In the analysis above, the Court has already concluded that Plaintiff failed to commence this action against Titan in accordance with state law prior to the expiration of the applicable statute of limitations and that Plaintiff's claims are, therefore, barred as a matter of law. (*Supra* at 7–15.) This Court has discretion to set aside an entry of default. *Surf's Up, LLC v. Rahim*, No. 4:14-CV-04706-BHH, 2016 WL 1089393, at *1 (D.S.C. Mar. 21, 2016) (citing *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) (describing a motion to set aside default as a matter that "lies largely within the discretion of the trial judge")). Given the Court's ruling that this action is barred by state law, the Court lacks personal jurisdiction over Titan and no further analysis is required regarding the motion to set aside default. Titan's motion is granted.

### <u>CONCLUSION</u>

For the reasons set forth above Defendants Yannic Dupont and Titan Transport,

Ltd.'s motions to dismiss for lack of personal jurisdiction, insufficiency of process, insufficiency of service of process and the expiration of the applicable statute of limitations (ECF Nos. 7 & 22) are GRANTED. Titan's related motion to set aside default (ECF No. 34) is also GRANTED. This action is dismissed in its entirety.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

November 12, 2020
Greenville, South Carolina